IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HAROLD HEMPSTEAD,

    Plaintiff,

v.                                                          CASE NO. 4:07-cv-513-RH-GRJ

CHARLES HALLEY, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case by filing a *pro se*, *in forma pauperis*, prisoner civil rights complaint under 42 U.S.C. § 1983, and is proceeding pursuant to a Fifth Amended Complaint, Doc. 64. Plaintiff is an inmate in the custody of the Florida Department of Corrections[1], and the events giving rise to the complaint occurred while Plaintiff was confined at Washington Correctional Institution (now known as Northwest Florida Reception Center (NWFRC)). All Defendants were employed at NWFRC during the events underlying the complaint. Now pending before the Court are Doc. 199 (Defendants' Motion For Summary Judgment) and Docs. 216 & 220 (Plaintiff's response and amended response in opposition to the motion and Plaintiff's Motion for Summary Judgment). For the reasons discussed below, the undersigned recommends that Defendants' Motion for Summary Judgment be granted, that Plaintiff's motion be denied, and that judgment be entered in Defendants' favor.

---

[1] Plaintiff is serving a sentence for multiple burglary convictions in Pinellas County; DOC records reflect that his current release date is October 11, 2162.

## Plaintiff's Allegations

The allegations of the Fifth Amended Complaint may be summarized as follows.[2] Plaintiff alleges that he served as a confidential informant (CI) to various law enforcement personnel, and that his cooperation with law enforcement resulted in the convictions of a number of persons who are incarcerated within the DOC. Plaintiff has been confined at many DOC facilities, and has sought protective management (PM) status at most, if not all, facilities due to alleged threats and/or actual violence perpetrated by other inmates.

Plaintiff alleges that within a week of his arrival at NWFRC he made Defendants Dudley, Halley, and Speights aware that Plaintiff presented a protection problem. He alleges that Dudley, Halley, and Speights failed to place him in PM review or a PM unit and allowed Plaintiff to remain in the open population, resulting in an assault by Inmate Mann. Plaintiff alleges that Dudley, Halley, and Speights also knew that Plaintiff previously had protection problems with Inmate Carey, and that Defendant Thompson also advised Dudley, Halley, and Speights of past problems with Inmate Carey. Plaintiff alleges that Inmate Carey raped him at NWFRC.

Plaintiff alleges that in May 2005 he formally requested PM status from Dudley, Halley, and Speights, because of issues with Inmate Mathis and other inmates. Plaintiff's PM request was denied, and he was assaulted by Inmate Tree and Inmate Gibson pulled a knife on him. Tree and Gibson were friends of Mathis, and all three inmates were "Blood" gang members.

Plaintiff requested PM status a second time in July or August 2005, from

---

[2]This summary is drawn directly from Plaintiff's "Statement of Claims", Doc. 64 at 20-28.

Defendants McAlpin, Halley, and Speights, due to the attacks by Tree and Gibson. Plaintiff asserts that McAlpin, Halley, and Speights failed to take action to protect him, and instead placed Plaintiff in a cell with Inmate Kasper, who had a history of sexual assault. Plaintiff alleges that Kasper raped Plaintiff with a toothbrush and razor that Kasper formed into a weapon.

Plaintiff alleges that after the attack by Kasper he requested PM status a third time from McAlpin, Halley, and Speights, but the officials again failed to act, as did Defendant Thompson. Plaintiff alleges that subsequently Inmate Carey assaulted and raped him.

Plaintiff alleges that McAlpin and Cook retaliated against him for filing grievances of the denial of PM status, and that as a result Plaintiff filed a lawsuit, *Hempstead v. Carter et al.*, Case No. 5:06-cv-68-MCR-EMT (N.D. Fla.). McAlpin took further retaliatory action against Plaintiff by directing three John Doe defendants to physically assault Plaintiff. Plaintiff alleges that the Doe defendants conspired with McAlpin to retaliate against Plaintiff and force him to dismiss his lawsuit. Plaintiff alleges that the Doe defendants broke his rib and injured his back and head.

Plaintiff alleges that Defendants McAlpin and Ruddy conspired to retaliate against Plaintiff by hiring Inmate Carey to stab the Plaintiff and thereby convince him to dismiss his lawsuit. Plaintiff initiated the instant case in December 2007, and he alleges that in April 2008, after returning to NWFRC from a transfer for court proceedings, Defendants Cook and Craig retaliated against him by physically assaulting him, in order to make him dismiss his lawsuit. Plaintiff contends that as a result of this assault he lost hearing in one ear for a week, had blood in his stool, and suffered from dizzy spells for ten days.

Plaintiff contends that in May 2008 Defendants Cook and Brannon conspired to retaliate against him by having Inmate Maqueira placed in Plaintiff's confinement cell in order to persuade Plaintiff to dismiss the instant complaint, and to rape and assault Plaintiff, and that in October 2008 Defendant Craig threatened him with retalitation.

For relief, Plaintiff seeks compensatory, punitive, and nominal damages, an injunction directing placement in a PM unit, an injunction directing "special review" from all inmates and staff identified in the complaint and in his classification file, and costs of this action.[3]

### Defendant's Summary Judgment Evidence

Defendant's summary judgment evidence reflects the following. Defendants recount Plaintiff's PM history prior to his transfer to NWFRC in detail. Defendants concede that Plaintiff had acted as a CI for law enforcement agencies, and that "special review" designation was warranted in order to ensure that certain inmates were tracked and housed to minimize potential conflicts. Plaintiff's PM history also reflects that Plaintiff made numerous PM requests that were found to be unwarranted. *See* Doc. 199.

Plaintiff was transferred to NWFRC in November 2004. Exh. B3. In February 2005 he was transferred to Lake CI and returned to NWFRC in April 2005. *Id*. On June 27, 2005, Plaintiff filed a grievance alleging that a document pertaining to his CI activities was stolen and that he was in fear for his life from "unknown individuals." Exh. A12; G1; G2 (Halley Affidavit), G3 (Speights Affidavit). The Institutional Classification

---

[3]Plaintiff filed a supplemental response advising the Court that he has been placed in PM status at Dade CI as of June 23, 2011. Doc. 220. Accordingly, to the extent that Plaintiff seeks injunctive relief ordering his placement in PM, his claim is moot.

Team ("ICT") was unable to confirm a need for protection, and recommended release to open population. *Id*. On July 14, 2005, the State Classification Office ("SCO") disapproved Plaintiff's request for PM. *Id*.

On August 13, 2005, Plaintiff requested protection from inmates on the open compound.  Exh. A13; G1; G2; G3; G6 (McAlpin Affidavit).  Plaintiff reported that inmates accused him of tax fraud and Inmate Gibson threatened him with a knife. Plaintiff also identified Inmates Lacey and Washington.  Plaintiff's claims were investigated by ICT but could not be substantiated.  The SCO disapproved Plaintiff"s request for PM on October 6, 2005.  *Id*.

On October 12, 2005, Plaintiff reported that he had been raped by Inmate Carey the previous year, in November or December 2004. Exh. D1 & G4 (Martin Affidavit). Plaintiff provided no other information. The investigative report reflects that the inmates were housed in different units.  The investigation was not pursued due to a lack of investigative leads.  *Id*.

On November 12, 2005, Plaintiff wrote a letter claiming that on November 7, 2005, Inmate Kasper displayed a homemade weapon and forced him to perform sexual acts on him. Exh. D4-6 & G4.  Inmate Kasper denied the allegation.   On November 23, 2005, Plaintiff was placed in Administrative Confinement based on his allegation against Inmate Kasper.  On December 6, 2005, Plaintiff was transferred out of the Department's custody to attend court.  Plaintiff returned to NWFRC on April 4, 2006. On April 20, 2006, Plaintiff was interviewed by the ICT and informed that Kasper had been transferred to another facility.  Plaintiff continued to request PM.  The ICT recommended denial, noting that no evidence was developed that substantiated Plaintiff's claim.  On May 4, 2006, the SCO disapproved the PM request. Exh. A14; B;

C10; G2; G3; & G6.

On July 19, 2006, Plaintiff was transferred to Florida State Prison and returned to NWFRC on April 11, 2007. At the time, there was a Motion to Dismiss pending in *Hempstead*, Case No. 5:06-cv-68-MCR-EMT, on the ground that Plaintiff's claims were barred by *Heck v. Humphrey*. Plaintiff had been ordered to file a response to the motion to dismiss by May 3, 2007. *See* Case No. 5:06-cv-68-MCR-EMT, Doc. 70. Instead of responding to the motion to dismiss, Plaintiff filed a notice of voluntary dismissal, signed on April 28, 2007. *Id*. Doc. 72. Plaintiff added "UD" to the case number, and asserted that he did so to show that his dismissal was "under duress." The case was dismissed without prejudice pursuant to Plaintiff's notice. *Id*. Doc. 75.

On May 7, 2007, Plaintiff presented to the medical clinic for injuries to his rib that he said he received while doing "dips" on the dip bar. On May 17, 2007, x-rays were taken of Plaintiff's left ribs. The radiology report revealed that there were no dislocations, "pneumo" or hemothorax. On May 24, 2007, Plaintiff was evaluated in the medical clinic and alleged an incident of staff abuse that occurred "on or around *April 25, 2007."* Plaintiff complained of left rib pain and back pain. The examining nurse concluded "no evidence of abuse noted per exam." Plaintiff was provided Ibuprofen, and an x-ray of his skull and spine were ordered. Exh. F1-F6.

On May 24, 2007, Plaintiff submitted an informal grievance alleging that on April 21, 2007*,* he was assaulted by three security officers who punched, kicked, and slammed him to the ground. He alleged that the officers threatened to kill him if he did not drop his lawsuit the next day. Plaintiff alleged that he suffered from headaches, back pain, and pain to the left rib area. Plaintiff did not provide any other details of the assault or identify the staff. Exh. D8; D11; G4.

Plaintiff filed a formal grievance making the same allegations. Another IG report was opened and subsequently closed due to lack of investigative leads.  On May 31, 2007,  Plaintiff was transferred to Zephyrhills CI.  Exh. B4, D14, G4.

On June 8, 2007, Plaintiff was examined by Dr. Tirado-Montes, who noted that he could not detect any abnormalities of the left ribs.  An AP view of the cervical spine indicated "reduced lordosis, but no fracture subluxation, degenerative disc disease, or osteoarthritic change."   Exh. D15, F7-9, G4.

On June 14, 2007, Plaintiff submitted an Inmate Request to the Tampa IG's office, asking to speak with Inspector Skipper.  Plaintiff was interviewed and claimed that he was assaulted by staff at NWFRC.  The investigation was not pursued due to lack of investigative leads, low solveability, and Plaintiff's failure to cooperate.  Exh. D15, G4.

On July 6, 2007, the Office of the Inspector General opened a case after receiving a "prison tip" from Plaintiff who alleged that Defendant Ruddy admitted to him that he set up another inmate to get stabbed.  A subsequent investigation revealed no reliable information to support the allegation.  Exh. D16, G4.

On August 23, 2007,  Plaintiff was transferred to NWFRC and on August 30, 2007,  Plaintiff was transferred to Appalacheee CI.   Exh. B5.  On October 4, 2007, Plaintiff was evaluated in the medical clinic at Appalachee CI after he wrote a grievance alleging staff abuse on September 26, 2007.   Plaintiff complained of headaches and pain in his right side and back. The observation summary indicated that  Plaintiff had no problems walking or sitting and that he had full range of motion.  Plaintiff was able to lift his legs without difficulty and no bruises or redness was noted to his back.   The medical evaluation revealed that there was no evidence of old injuries.  Plaintiff was

standing up straight with no complaints.  Exh. F11-13.

Defendants contend that Plaintiff's claims against Defendants Craig, Cook, and Brannon stem from events occurring in 2008, after December 4, 2007, when Plaintiff filed this case, and that Plaintiff did not administratively exhaust such claims.

### Plaintiff's Summary Judgment Evidence

The Court granted Plaintiff leave to file excess pages in his response/cross-motion for summary judgment.  Plaintiff filed a 78-page response/motion that is, in essence, an expanded version of his Fifth Amended Complaint.  As support, Plaintiff has submitted a 75-page affidavit that also restates his claims.  *See* Doc. 216, Exh. 82.  Plaintiff also submitted exhibits consisting primarily of his requests for administrative remedies regarding PM status, and copies of Defendant's exhibits pertaining to the disposition of his requests.  Throughout his response, Plaintiff includes statements such as "Plaintiff tried to get more evidence on these matters in discovery, but the Defendants refused to disclose such," and "Plaintiff is in the process of trying to get an affidavit from this inmate."  Doc. 216.  With respect to Defendants' argument that Plaintiff failed to administratively exhaust claims relating to events occurring after this case was filed, Plaintiff alleges that he "thoroughly exhausted" administrative remedies, and provides an affidavit to that effect.  *Id*.; Exh. 100.

### Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA):

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In accordance with the PLRA, the Court may not considered unexhausted claims.  *Jones v. Bock*, 549 U.S. 220 (2007).

Defendants have asserted failure to exhaust as an affirmative defense to Plaintiff's claims stemming from events in 2008.  Because Plaintiff filed this case in December 2007, it is clear that claims arising in 2008 could not have been administratively exhausted before this case was filed.  Even though Plaintiff may have pursued and ultimately completed exhaustion of his administrative remedies since this case was filed, claims arising after this case was filed are still subject to dismissal, because he failed to exhaust these remedies before suit was commenced.  *See*, *e.g.*, *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir.2003) ("court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred" and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory"); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C.Cir. 2001) (rejecting argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) ( "The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.").

Accordingly, all of Plaintiff's claims stemming from events in 2008 are due to be dismissed without prejudice for failure to exhaust administrative remedies.

### Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.   *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks, 548 U.S. 521, 530 (2006)*.  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  *See, e.g., Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).*

**A.  Eighth Amendment Failure-to-Protect Claims**

The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular, prison

officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," *id*. at 828, and thus gives rise to a § 1983 claim.

"To survive summary judgment on such a § 1983 claim, a plaintiff must 'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Bugge v. Roberts*, 2011 WL 1885537 *3 (11th Cir. 2011) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir.1995)). The first element is an objective standard. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 9 (quotation marks omitted). The second element, "deliberate indifference," is a subjective standard having three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir.1999).

Viewing the evidence in the light most favorable to Plaintiff, it is clear that Defendants are entitled to summary judgment on all of Plaintiff's failure-to-protect claims. Defendants' documents and affidavits establish that the attacks and threats alleged by Plaintiff were investigated and could not be substantiated, and therefore Defendants concluded that the requests for PM underlying the instant complaint should be denied. Plaintiff has failed to come forward with any evidence that Defendants disregarded any risk to Plaintiff or that Plaintiff came to any harm as a result of Defendants' response, or non-response, to any alleged risk. The medical records show that Plaintiff was treated for an exercise-related injury and other minor issues, and

Plaintiff points to no medical evidence that supports his claim of rape and beatings by other inmates or staff.  Thus, even if the Court found that Plaintiff faced a substantial risk of serious harm – a questionable proposition in light of the farfetched nature of some of Plaintiff's claims – Plaintiff's claims fail on the deliberate-indifference and causation elements.  *See Hale*,  50 F.3d at 1582.

The Court has carefully considered Plaintiff's response, exhibits, and affidavit in concluding that Defendants are entitled to summary judgment.  In affording Plaintiff the opportunity to file a Fifth Amended Complaint the Court advised Plaintiff that "[t]he time for playing hide the ball is over," and "[m]ore words do not mean a better chance of success."  Doc. 58.  The Court has afforded Plaintiff wide latitude in opposing summary judgment, but expansive repetition does not infuse conclusional allegations with substance for summary judgment purposes.  *See, e.g., Waddell, 276 F.3d at 1279.*

**B. <u>Retaliation Claims</u>**

The First Amendment prohibits state officials from retaliating against prisoners for exercising their free speech rights, though legitimate correctional policies might justify restrictions on prisoner speech.  *See, e.g., Wright v. Newsome, 795 f. 2d 964, 968 (11th Cir. 1986); Pell v. Procunier, 417 U.S. 817, 821 (1974).*  To proceed on a claim for retaliation and withstand entry of summary judgment, the inmate must establish: (1) the speech was constitutionally protected; (1) he suffered adverse consequences that would deter an ordinary person from engaging in such speech; and (3) there is a causal relationship between the protected speech and the retaliatory action.  *See Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).*

In this case, Plaintiff alleges that Defendants retaliated against him for filing grievances and lawsuits by physically assaulting him.  In particular, Plaintiff contends

that three unnamed guards beat him to force him to withdraw his previous federal lawsuit in April 2007. The docket in Plaintiff's previous case supports a conclusion that Plaintiff dismissed it because he faced dismissal pursuant to *Heck*. Further, for the reasons explained above Plaintiff has failed to show that he suffered any physical harm or other adverse consequences that were causally related to Plaintiff's exercise of his First Amendment rights.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion For Summary Judgment (Doc.199) be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Doc. 216) be **DENIED**, that Plaintiff's claims stemming from incidents in 2008 be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that judgment on Plaintiff's remaining claims be entered in Defendants' favor.

IN CHAMBERS this 29th day of August 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**